**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ATARI INTERACTIVE, INC., | Civil Action No. 1:21-cv-04272 |
| Plaintiff, | **COMPLAINT** |
| -against- | |
| PIXELS.COM, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Atari Interactive, Inc. ("Atari" or "Plaintiff"), as and for its complaint against

defendant Pixels.com, LLC (hereinafter "Pixels" or "Defendant"), alleges as follows:

## PARTIES

1.      Atari is a Delaware corporation with its principal place of business in New York,

New York.

2.      Plaintiff is informed and believes, and thereon alleges, that Pixels is an Illinois

limited liability company with its principal place of business in Santa Monica, California.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

sections 1331 and 1338 because the action arises under the federal Copyright Act and Lanham

Act. *See* 17 U.S.C. §§ 101, *et seq*.; 15 U.S.C. §§ 1051, *et seq*. This Court also has supplemental

jurisdiction pursuant to 28 U.S.C. §§ 1367, 1338(b).

4.      While not required, the Court also has diversity jurisdiction pursuant to 28 U.S.C.

section 1332, because Atari and Pixels are citizens of different states, and the amount in

controversy exceeds $75,000.

5.      Venue in this district is proper under 28 U.S.C. § 1391 because Atari maintains its principal place of business and suffered injury here. Further, upon information and belief, certain of the counterfeit and infringing goods described in this complaint were sold to customers in this district. Accordingly, a substantial portion of the events and omissions giving rise to this action occurred within the district.

6.      This Court has personal jurisdiction over Pixels because Pixels infringed the intellectual property owned by Atari in New York, intentionally directing the tortious conduct described below knowing that the effects would be felt by Atari in this judicial district, and upon information and belief, regularly markets and sells goods, including goods at issue in this case, to customers in New York.

## GENERAL ALLEGATIONS

**A.      Atari is an Iconic Video Game Brand Recognized by the General Public.**

7.      Atari is one of the most famous video game brands in history. Founded in the early 1970s in California, Atari became *the* pioneer in the video game industry during the 1970s and continuing into the 1980s, developing and releasing (a) home video consoles—*e.g.*, the Atari 2600—that set new standards in design and function, and (b) a series of hit games—*e.g.*, *Pong*, *Breakout*, *Asteroids*, and many others.

8.      Atari became known to relevant consumers and the public at large by its inherently distinctive trade name, as well as its inherently distinctive A-shaped or "Fuji" logo design. The Atari name and logo are depicted immediately below:



9.      Atari also became known to relevant consumers and the public at large by the trade dress and ornamental design of its Atari 2600 console, the trade dress and ornamental design of its Atari 2600 joystick controller, and the distinctive looks of many of its iconic games, including *Pong*, *Breakout*, *Asteroids*, *Crystal Castles*, *Yar's Revenge*, *Tempest*, *Gravitar*, *Centipede*, and many others. The Atari 2600 console sold approximately 30 million units.

10.      As described by Tim Lapetino, the former Executive Director of the Museum of Video Game Art, and the author of *Art of Atari*, an over-350-page book on the art and design history of the Atari brand: "The Atari brand is one of the most iconic brands in video game history and has been and remains well-known throughout the public at large. Not only are the Atari name and logo itself well-known, but so are individual Atari games, its consoles and their unique design elements, and the historical imagery associated with them."

11.      Atari has continued to market, promote, license, and sell products, including a catalog of more than 200 well-known games, worldwide under the Atari name and logo for over four decades.

12.      Relevant consumers and members of the general public recognize and revere Atari, as well as the Atari 2600 console, Atari 2600 joystick controller, and Atari's various

games, as well-known icons of both the video game industry and American culture more broadly.

13.     Atari has developed, promoted, and distributed new interactive entertainment and products, including a new VCS console (modeled off the design of the original 2600 unit) that raised more than $3 million in crowd-funding and which is currently in production.

14.     Atari has expanded into a multi-platform, global interactive entertainment company, adapting many of its classic games for online platforms such as Facebook, smartphones, and tablets.

15.     Atari has an active licensing business through which Atari has extended its brand into other media, merchandising, and publishing categories. Since the release of the Atari 2600 console and joystick, as well as its many video games, Atari has received tens of millions of dollars in licensing fees for devices incorporating its trademarks and trade dress, such as its Plug and Play Joystick and Flashback devices.

16.     Moreover, Atari is regularly referenced in pop culture, such as in Steven Spielberg's 2018 film *Ready Player One*, which grossed nearly $600 million at the box office worldwide. The ubiquitous nature of Atari in culture is also shown by the diversity in Atari-licensed products—Atari having recently entered into a deal with GSD Group to develop Atari Hotels. To this day, there exist active, online Atari fan forums.

17.     The Atari name, logo, classic video games, and 2600 console and joystick are valuable intellectual property owned by Atari. Atari therefore obtained registrations with the United States Patent and Trademark Office for many of its trademarks and registrations with the United States Copyright Office for many of its copyrights. For example:

a.   Through commercial use and contractual agreements with its predecessors-in-interest, Atari is the owner of USPTO Trademark Registration No. 4,214,210 for the ATARI name and logo used in connection with, among other things, "printed matter, namely posters, stickers" and "articles of clothing"; and Atari is the owner of USPTO Trademark Registration No. 4,324,638 for the PONG name used in connection with, among other things "printed matter, namely posters, stickers" and "articles of clothing." Appended hereto as Exhibits 1 and 2 are true and correct copies of the aforementioned trademark registrations.

b.   Through contractual agreements with its predecessors-in-interest, Atari is the owner of multiple copyright registrations for, among others, the following video games, including the visual elements thereof: *Adventure, Asteroids*, *Breakout*, *Centipede*, *Gravitar*, *Missile Command*, *Pong*, *Crystal Castles* and *Yar's Revenge*.

c.   Atari is also the original registrant for and owner of copyright registrations for its Greatest Hits Volume I & II, and Classics Evolved compilation video games—Registration Nos. PA 1-805-830, PA 1-805-832, and PA 1-746-829. These video games allow for the gameplay of and include the visual elements from each of the games listed in subsection (b) above. These video games also include original artwork related to these video games.

18.   Regarding the iconic Atari 2600 joystick controller, in 1980, the USPTO issued two design patents, U.S. Patent Nos. D254,544 and D255,565 (attached hereto as Exhibits 3 and

4, respectively), both since expired, for the ornamental design elements of the Atari 2600

joystick controller depicted in the following representative figures:

| U.S. Patent No. | Representative Figures |
|---|---|
| D254,544 |  |
| D255,565 | |

19.     Atari continues to market, license, and/or sell products embodying the ornamental

design and iconic trade dress of the Atari 2600 joystick controller. One example is the Atari 2600

Plug & Play Joystick, which incorporates many of the distinctive trade dress elements including, but

not limited to, the rectangular base with a protruding hexagonal joystick mounted near the center, a

single prominent red button located at the top left corner of the base, a rubber boot that connects the

joystick to the base and is characterized by three concentric circular ridges of progressively

decreasing height, a two-tiered tapered design of the base, and a dashed circle circumscribing the base of the joystick and rubber boot:



20.    The trade dress of the joystick controller described above is not functional. The hexagonal shape of the joystick, the color and positioning of the red button, the three concentric circular ridges of progressively decreasing height, two-tiered tapered design of the base, and dashed circle circumscribing the base of the joystick and rubber boot are not essential to the use or purpose of the article (joysticks), and do not affect its costs or qualities. Protecting the joystick trade dress would not significantly hinder competition in the market by limiting the range of adequate alternative designs, as the permutations of types of joystick components, as well as their various arrangements, are nearly limitless.

21.    The Atari 2600 console was named to *IEEE Spectrum*'s Consumer Electronics Hall of Fame as one of "The Greatest Gadgets of the Past 50 Years."[1] *IEEE Spectrum* is the flagship magazine and website of the Institute of Electrical and Electronics Engineers, the world's largest professional organization devoted to engineering and the applied sciences with over 400,000

---

[1] *See* Brian Santo, *The Consumer Electronics Hall of Fame: Atari 2600*, IEEE SPECTRUM (Jan. 3, 2019, 14:00 GMT), https://spectrum.ieee.org/consumer-electronics/gadgets/the-consumer-electronics-hall-of-fame-atari-2600.

members.[2] In their article, *IEEE* spectrum selected and used a photo that prominently features not only the 2600 console, but also the distinctive 2600 joystick.



22.     Regarding the Atari 2600 console, in 1980, the USPTO issued a design patent, U.S. Patent No. D251,143 (attached hereto as Exhibit 5), since expired, for the ornamental design elements of the Atari 2600 console. The design patent image is depicted directly below:



---

[2] *See About IEEE Spectrum*, IEEE SPECTRUM (last visited February 21, 2021). https://spectrum.ieee.org/static/aboutus.

23.     The trade dress of the Atari 2600 console is widely recognized by the general

consuming public for its distinctive features, including, but not limited to, its rectangular body-panel

with ridged slats, cartridge slot in the middle of the top switchboard flanked by an equal number of

switches on either side of the slot, and embossed anterior ridge of the front-panel sloping downward

in a U-shape.

24.     The trade dress of the Atari 2600 console described above is not functional. The

rectangular body-panel with ridged slats, cartridge slot in the middle of the top switchboard flanked

by an equal number of switches on either side of the slot, and embossed anterior ridge of the front-

panel sloping downward in a U-shape are not essential to the use or purpose of the article (consoles),

and do not affect its costs or qualities. Protecting the console trade dress would not significantly

hinder competition in the market by limiting the range of adequate alternative designs, as the

permutations of types of console components, as well as their arrangements, are nearly limitless.

25.     Again, over the course of its production lifespan, the Atari 2600 sold approximately

30 million units.

26.     Given the heavy advertising and marketing of Atari as a brand, as well as the Atari

2600 console and Atari 2600 joystick, the overall design and visual presentation of the Atari logo, the

2600 console, the 2600 joystick, and *Pong* game would collectively symbolize not just Atari, but

video games as a whole, decades after their release.

27.     In addition to USPTO Registration No. 4,324,638 for the PONG name used in

connection with, among other things, "printed matter, namely posters, stickers" and "articles of

clothing," the look and trade dress of a game of *Pong* is one of the most recognizable images in video

game history. "Commentators and industry historians generally agree that the multi-billion dollar video game industry began forty years ago in November 1972 with Atari's release of *Pong*."[3]

28.     Pong's simple design is immediately recognizable to vast swaths of the general consuming public.[4] It consists of two vertical rectangular white "paddles" on opposite sides of a vertical line bisecting the middle of the screen, with a small white pixel serving as the "ball" that bounces from one paddle to the other, until one paddle misses, scoring a point for the other. Each paddle's respective score is often displayed in the top of that paddle's side of the screen, toward the center. An image of this seminal game is presented directly below:



---

[3] William K. Ford, *Copy Game for High Score: The First Video Game Lawsuit*, 20 UNIV. GA. J. INTELL. PROP. L. 2 (2012) (noting that while Pong was no the first video game, it was the first video game hit).
[4] *See, e.g.*, Jos Kirps, *The Very First Video Game Ever Released (and Its [sic] [N]ot Pong)*, STREETDIRECTORY.COM (last accessed February 24, 2021), https://www.streetdirectory.com/travel_guide/141178/gaming/the_very_first_video_game_ever_released_and_its_not_pong.html (referring to *Pong* as "the famous table tennis inspired video game released in 1972 by Atari, Inc."); Laura Parker and Darryn King, *Why Pong Scored So Highly for Atari*, THE GUARDIAN (Apr. 16, 2008 12:04 GMT), https://www.theguardian.com/technology/2008/apr/17/games.atari (noting that *Pong* "launched the videogames industry," referring to it as an "instant hit," and stating that *Pong* "took things to a new level for the once-tiny video [game] company, establishing Atari as the market leader in home videogames with a profit of $40m around 1977.").

29.     The trade dress of *Pong* described above is not functional. The two vertical rectangular white "paddles" on opposite sides of a vertical line bisecting the middle of the screen, with a small white pixel serving as the "ball" that bounces from one paddle to the other, with the each paddle's respective score displayed in the top of that paddle's side of the screen, toward the center, are not essential to the use or purpose of the article (the game-screen), and do not affect its costs or qualities. Protecting the *Pong* trade dress would not significantly hinder competition in the market by limiting the range of adequate alternative designs, as the permutations of types of designs for tennis-adjacent games, are nearly limitless.

30.     *Pong* is part of the Smithsonian National Museum of American History5 and has been featured in episodes of television series including *That '70s Show*, *King of the Hill*, and *Saturday Night Live*, as well as in an American Express commercial where tennis legend Andy Roddick plays a tennis match against one of Pong's white paddles.[5] It is one of Atari's genre-defining hits, and the general public views *Pong* as having skyrocketed Atari to public prominence.

31.     Moreover, through extensive and continuous promotion and sales, unsolicited press (including documentary films, newspaper coverage, television interviews and various other media coverage over four decades), and word of mouth, Atari owns common law rights in various trademarks and trade dress, including the *Atari* name and logo, the *Adventure*, *Asteroids*, *Breakout*, *Centipede*, *Gravitar*, *Missile Command*, *Crystal Castles*, and *Yar's Revenge* names and graphics, and the overall look and feel of the Atari 2600 game console and joystick.

---

[5] *See That '70s Show*, "Punk Chick" (Fox Broadcasting Company television broadcast June 21, 1999); *King of the Hill*, "It Ain't Over 'Til the Fat Neighbor Sings" (Fox Broadcasting Company television broadcast May 15, 2005); *Saturday Night Live*, "Season 1, Episode 5" (NBC television broadcast Nov. 15, 1975); *Roddick vs. Pong*, YouTube (https://www.youtube.com/watch?v=7UfGpt-0ncc) (accessed May 3, 2021)

**B.** **Pixels Knowingly Infringes Upon Atari's Intellectual Property Rights by Creating, Manufacturing, and Distributing Large Quantities of Counterfeit Atari Clothing and Printed Material.**

32.     Founded on or around 2006, Pixels' stated mission is "to connect artists and art buyers through technology and to provide artists with the tools they need to build successful businesses both online and offline." What Pixels does not mention is that its platform results in it selling and facilitating the manufacturing of substantial quantities of counterfeit and infringing goods.

33.     Through Pixels' websites, including but not limited to www.pixels.com and www.fineartamerica.com, visitors can upload designs that Pixels then displays on a variety of products. While the default is often art-related, such as a print, the designs can also be displayed on myriad categories of products, from apparel to phone cases to home décor, and many others pictured on the site, at the behest of the customer. Pixels offers for sale the products on display, using the final product photos in product listing pages hosted by Pixels on its sites. An example of a product listing page from www.fineartamerica.com for a counterfeit Atari product is pictured below. To be clear, Pixels does not sell authentic or licensed Atari apparel—this is a counterfeit:



34.     If a visitor to the site orders a product, upon information and belief, Pixels then either prints the order on a black physical product, or facilitates the same. This business model is commonly referred to as "print-on-demand" because companies like Pixels do not hold inventory of finished products, but instead print or facilitate the printing of the designs on physical products when an order is placed.

35.     Indeed, below are some examples of counterfeit and infringing Atari products, not only sold, but manufactured and shipped through www.fineartamerica.com:



36.     Upon ordering such items, the purchaser receives an invoice, showing Fine Art America as the seller, an example shown below:



37.     Moreover, the package arrives addressed from Pixels. The package in which the above products arrived gave Pixels, 2415 N. Geneva Terrace, Chicago, IL 60614 as the return address.

38.     Pixels openly admits to manufacturing and shipping its products directly to consumers. Specifically, on www.fineartamerica.com, Pixels represents:

Fine Art America has the largest print-on-demand fulfillment network in the world. We manufacture t-shirts & apparel at one manufacturing center in the United States. Our United States manufacturing center can ship t-shirts & apparel to any destination in the world. Once you place your order, your t-shirts & apparel will be ready to ship within 2 - 3 business days.[6]

39.     Upon information and belief, Pixels then ships and processes the payment for the product. Pixels will send the user who uploaded the design a commission, but upon information and belief, retains the majority of the sales proceeds for itself. Pixels also handles all of the customer service and returns itself.

40.     Pixels handles every aspect of the sales made on www.fineartamerica.com and www.pixels.com. Customers complete their purchases on the site, with Pixels taking their payment information, processing the payments, and depositing the money into their account. Once the order is complete, Pixels provides order confirmations on its site and by e-mail, providing customers with tracking numbers for shipment of their purchases. All customer service is provided by Pixels. Again, once an order is placed, upon information and belief, Pixels either prints or facilitates the printing of the product.

41.     Pixels ships the products to its customers through major carriers, with Pixels as the return address. Upon information and belief, Pixels maintains agreements with these carriers, and shipments is made according to the method selected and paid for by customers on www.fineartamerica.com and www.pixels.com.

42.     Using this business model, Pixels is advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from large quantities of counterfeit Atari products. Many of the counterfeit products incorporate exact replicas of the registered ATARI and PONG trademarks (name and logo) on products in the classes for which the marks are

---

[6] The same representation is made on www.pixels.com.

registered. Other counterfeit products incorporate easily identifiable depictions of the Atari 2600 console and joystick with the distinctive red button, and the names of and images from Atari's popular games. A few examples—a drop in the bucket of Pixels' entire catalogue—are depicted below. Others are shown in Exhibit 6.



43.    In addition, Pixels is advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from products incorporating copyrights owned by Atari. A few examples are depicted below. Others are shown in Exhibit 6.



44.    Pixels' aforementioned infringement is knowing and willful, as evidenced by (a) the sheer quantity of different counterfeit designs being sold by Pixels, (b) the exact duplication

of a variety of iconic Atari designs, and (c) Pixels' pattern and practice of infringing upon the intellectual property rights of well-known brands.

45.    Upon information and belief, Pixels fails to disable use of "Atari" in keyword searches on its platform. This allows Pixels users to label products, for example, as "Atari T-Shirt." Pixels customers can easily locate items by searching for "Atari" and examining the results. A simple keyword search of "Atari" on Pixels' site in the "Men's T-Shirts" product category returns "409 Atari t-shirts for sale."[7]

46.    Because Pixels places a significant amount of online advertisements, when a customer searches for "Atari" (or other Atari-owned trademarks) on a search engine like Google, upon information and belief, the counterfeit items sold by Pixels appear side-by-side in the search results with authentic products.

C.    **Pixels' Infringement Extends Beyond Use of Atari's Intellectual Property on the Actual Products Sold on the Site.**

47.    As described above, Pixels infringes upon Atari's intellectual property rights by promoting and selling products incorporating exact copies of Atari's trademarks and copyrights. Pixels' infringement, however, goes beyond the products themselves.

48.    Pixels used the word marks "Atari" and "Pong" in various ways to advertise and promote the Pixels websites and services, including by displaying the words "Atari" and "Pong" repeatedly not just on products, but on the site itself. In addition, upon information and belief, Pixels used the word marks "Atari" and "Pong" as keywords that drove users to the Pixels' sites. Making use of the "Atari" and "Pong" marks in this way did more than just advertise and promote specific products; rather, Pixels' uses of the Atari's marks above and beyond on the

---

[7] *See* https://fineartamerica.com/shop/tshirts/atari (last accessed May 11, 2021).

products themselves advertised and promoted Pixels and its services, as well as created a false

perception of Pixels' association with or endorsement by Atari.

49.     Pixels has profited from its unauthorized use of Atari's intellectual property

through the sale of the infringing goods and advertising and promotional uses of the Atari mark,

and Pixels' infringement has harmed Atari by cheapening and diluting the Atari brand, diverting

profits from the sale of authentic Atari goods, and causing Atari to lose profits and licensing fees

from the authorized use of its intellectual property.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement and Counterfeiting)

50.     Atari re-alleges and incorporates herein by reference each and every allegation set

forth above.

51.     Atari is the owner of the registered ATARI® and PONG® trademarks for the

categories of goods on which Pixels is using the trademarks, as well as unregistered trademarks

for the ADVENTURE, ASTEROIDS, BREAKOUT, CENTIPEDE, CRYSTAL CASTLES

GRAVITAR, MISSILE COMMAND, and YAR'S REVENGE names (collectively, the "Atari

Trademarks").

52.     The Atari Trademarks are valid, protectable marks.

53.     Pixels is advertising, marketing, creating, displaying, offering for sale, selling,

distributing, and profiting from products incorporating the Atari Trademarks or nearly identical

variations thereof. In addition, beyond using the Atari Trademarks on products themselves,

Pixels has used the trademarks on the Pixels site for promotional purposes and to drive

consumers to the site.

54.   Pixels' use of the Atari Trademarks is likely to cause confusion among ordinary purchasers as to the source of the goods.

55.   Atari has never consented to Pixels' use of its trademarks.

56.   Pixels infringed upon the Atari Trademarks and engaged in trademark counterfeiting willfully.

57.   As a proximate result of the unfair advantage accruing to Pixels from using confusingly similar marks and deceptively trading on Atari's goodwill, Pixels has made substantial sales and profits in amounts to be established according to proof.

58.   As a proximate result of the unfair advantage accruing to Pixels from using similar or quasi-similar marks and deceptively trading on Atari's goodwill, Atari has been damaged and deprived of substantial sales and has been deprived of the value of its trademarks as commercial assets, in amounts to be established according to proof.

59.   Unless restrained by the Court, Pixels will continue to infringe Atari's trademarks. Pecuniary compensation will not afford Atari adequate relief for the damage to its trademarks and brand. In the absence of injunctive relief, consumers are likely to continue to be mistaken or deceived as to the true source, origin, sponsorship, and affiliation of Pixels and their purported goods.

60.   Pixels' acts were committed, and continue to be committed, with actual notice of Atari's exclusive rights and with the intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Plaintiff and its products. Pursuant to 15 U.S.C. section 1117, Atari is, therefore, entitled to recover three times its actual damages or three times Pixels' profits, whichever is greater, together with its attorneys' fees. Atari is also entitled to statutory damages for willful counterfeiting of $2 million per type of

good per registered mark. In addition, pursuant to 15 U.S.C. section 1118, Atari is entitled to an order requiring destruction of all infringing products and promotional materials in Pixels' possession.

## SECOND CLAIM FOR RELIEF

### (Copyright Infringement)

61.     Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

62.     Atari has complied in all respects with the copyright laws of the United States, 17 U.S.C. §101 et seq., and has secured the exclusive rights and privileges in and to the original expression in the following copyrights that have been duly registered with the U.S. Copyright Office:  *Adventure*, *Asteroids*, *Breakout*, *Centipede*, *Crystal Castles*, *Gravitar*, *Missile Command*, *Pong*, and *Yar's Revenge*.

63.     Pixels had access to Atari's copyrighted works as established by, among other things, (a) the widespread availability of pictures of Atari-made or Atari-licensed products incorporating those copyrights, (b) the fact that Atari's copyrighted games are well known in the industry and in the public, (c) the striking similarity between the expression used on the infringing goods and the expression in Atari's copyrights, and (d) the fact that Pixels affirmatively advertises the infringing goods through the use of the Atari trade name.

64.     Pixels infringed Atari's copyrights by advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from products incorporating protectable expression taken from Atari's copyrights, without Atari's permission.

65.     Pixels infringed Atari's copyrights willfully.

66.     Atari is entitled to actual damages and Pixels' profits, in an amount to be proven at trial.

67.     Alternatively, Atari is entitled to statutory damages for willful copyright infringement in an amount no less than $150,000.00 per copyright.

68.     Pixels' acts have caused and will continue to cause irreparable harm to Atari unless restrained by this Court. Atari has no adequate remedy at law. Accordingly, Atari is entitled to an order enjoining and restraining Pixels and all those acting in concert with Pixels, during the pendency of this action and permanently thereafter, from manufacturing, distributing, importing, exporting, marketing, offering for sale, or selling copies or substantially similar copies of Atari's copyrights.

## THIRD CLAIM FOR RELIEF

### (Trademark Dilution)

69.     Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

70.     The ATARI® and PONG® trademarks are widely recognized by the general consuming public of the United States.

71.     Pixels' unauthorized use of the ATARI® and PONG® trademarks has the effect of tarnishing and blurring Atari's authentic trademarks.

72.     Atari is entitled to recover damages and/or Pixels' profits in an amount to be determined at trial.

73.     Atari is entitled to an order preliminarily and permanently enjoining Pixels from using its trademarks in the future.

74.     Because Pixels has willfully intended to cause dilution of Atari's trademarks, Atari is further entitled to recover its costs of suit and reasonable attorney's fees, pursuant to 15 U.S.C. sections 1117 and 1125(c)(2).

### FOURTH CLAIM FOR RELIEF

### (False Designation of Origin)

75.     Atari re-alleges and incorporate herein by reference each and every allegation set forth above.

76.     The Atari Trademarks, as well as the overall look and feel of Atari's 2600 console and joystick (the "2600 trade dress"), are inherently distinctive and have also acquired secondary meaning through extensive promotion and sales, over unsolicited press, and word of mouth for over four decades.

77.     Pixels is advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from products incorporating the Atari Trademarks and the 2600 trade dress or nearly identical variations thereof.

78.     Pixels' use of the Atari Trademarks and the 2600 trade dress is likely to cause confusion among ordinary purchasers as to the source of the goods.

79.     Atari has never consented to Pixels' use of its trademarks or trade dress.

80.     Pixels infringed upon Atari's trademarks and trade dress willfully.

81.     As a proximate result of the unfair advantage accruing to Pixels from using similar or quasi-similar marks and trade dress and deceptively trading on Atari's goodwill, Pixels has made substantial sales and profits in amounts to be established according to proof.

82.     As a proximate result of the unfair advantage accruing to Pixels from using confusingly similar marks and trade dress and deceptively trading on Atari's goodwill, Atari has

been damaged and deprived of substantial sales and has been deprived of the value of its trademarks as commercial assets, in amounts to be established according to proof.

83.    Unless restrained by the Court, Pixels will continue to infringe Atari's trademarks and trade dress. Pecuniary compensation will not afford Atari adequate relief for the damage to its trademarks, trade dress, and brand. In the absence of injunctive relief, consumers are likely to continue to be mistaken or deceived as to the true source, origin, sponsorship, and affiliation of Pixels and their purported goods.

84.    Pixels' acts were committed, and continue to be committed, with actual notice of Atari's exclusive rights and with the intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Plaintiff and its products. Pursuant to 15 U.S.C. section 1117, Atari is, therefore, entitled to recover three times its actual damages or three times Pixels' profits, whichever is greater, together with its attorneys' fees. Atari is also entitled to statutory damages of $2 million per type of good per registered mark. In addition, pursuant to 15 U.S.C. section 1118, Atari is entitled to an order requiring destruction of all infringing products and promotional materials in Pixels' possession.

## FIFTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

85.    Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

86.    Pixels' unauthorized use of Atari's trademarks and trade dress is likely to cause consumer confusion as to the source, origin, sponsorship, and association of Pixels' products.

87.    Atari has been, and will continue to be, damaged and irreparably harmed by the actions of Pixels unless Pixels is enjoined by this Court.

88. Atari has no adequate remedy at law.

89. Atari is entitled to recover damages and/or Pixels' profits in an amount to be determined at trial.

90. Atari is informed and believes, and thereon alleges, that Pixels committed the foregoing acts with the intention of depriving Atari of its legal rights, with oppression, fraud, and/or malice, and in conscious disregard of Atari's rights. Atari is, therefore, entitled to an award of exemplary and punitive damages, according to proof.

## SIXTH CLAIM FOR RELIEF

### (Contributory Trademark Infringement and Counterfeiting)

91. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

92. Pixels has been and continues to be aware of – and has been and continues to contribute to – the infringement of Atari's trademarks and the use of counterfeit Atari products on its site. The infringing and counterfeit products are prominently displayed and promoted on Pixels' websites. Pixels' websites are configured so that a search for "Atari" or other Atari trade names will lead directly to the infringing and counterfeit goods. Pixels creates and distributes the infringing and counterfeit goods to the end consumer and facilitates the financial transactions.

93. Alternatively, Pixels has remained willfully blind to the infringement and/or counterfeiting of Atari trademarks on its websites and on the products it creates and distributes to the end consumer.

94. Atari has been damaged by and Pixels has profited from Pixels' contributory trademark infringement and counterfeiting.

95.     To remedy Pixels' contributory trademark infringement, Atari is entitled to all of the remedies set forth above for direct trademark infringement, counterfeiting, false designation of origin, and unfair competition.

### SEVENTH CLAIM FOR RELIEF

### (Contributory Copyright Infringement)

96.     Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

97.     Pixels has been and continues to be aware of – and has been and continues to contribute to – the infringement of Atari's copyrights on its site. The infringing products are prominently displayed and promoted on Pixels' websites. Pixels' websites are configured so that a search for "Atari" or other Atari trade names will lead directly to the infringing goods. Pixels creates and distributes the infringing goods to the end consumer and facilitates the financial transactions.

98.     Alternatively, Pixels has remained willfully blind to the infringement of Atari copyrights on its websites and on the products it creates and distributes to the end consumer.

99.     Atari has been damaged by and Pixels has profited from Pixels' contributory copyright infringement.

100.    To remedy Pixels' contributory copyright infringement, Atari is entitled to all of the remedies set forth above for direct copyright infringement.

### EIGHTH CLAIM FOR RELIEF

### (Vicarious Trademark Infringement and Counterfeiting)

101.    Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

102.    Pixels and the third parties who design and upload the infringing designs are in an apparent or actual partnership, have the authority to bind one another in transactions with third parties, and/or exercise joint ownership or control over the infringing products. Pixels is also in an apparent or actual partnership with any third parties that it may hire to print products purchased on its websites, having the authority to bind one another in transactions with third parties, and/or exercise joint ownership or control over the infringing products.

103.    Pixels is thus vicariously liable for the trademark infringement and counterfeiting of the third parties who design and upload the infringing designs onto the Pixels site, and any third-party manufacturers of the counterfeit or infringing goods.

104.    Atari has been damaged by and Pixels has profited from Pixels' vicarious trademark infringement and counterfeiting.

105.    To remedy Pixels' vicarious trademark infringement and counterfeiting, Atari is entitled to all of the remedies set forth above for direct trademark infringement, counterfeiting, false designation of origin, and unfair competition.

## NINTH CLAIM FOR RELIEF

### (Vicarious Copyright Infringement)

106.    Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

107.    Pixels enjoys a direct financial benefit from the copyright infringement on its websites. Pixels gets paid a percentage of every sale of every product displayed on the site. The availability of the infringing goods also draws customers to the site, which causes Pixels to make money both through the sale of the infringing goods and through the sale of all goods displayed on its site.

108.     Pixels has the legal right to stop or limit the copyright infringement on its websites and the practical ability to do so. Pixels has the ability and means to monitor its site for infringing designs and the right to remove them.

109.     Atari has been damaged by and Pixels has profited from Pixels' vicarious copyright infringement. To remedy Pixels' vicarious copyright infringement, Atari is entitled to all of the remedies set forth above for direct copyright infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1.     For preliminary and permanent injunctions enjoining and restraining Defendants, their agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of, or in concert with Defendants, from:

    a.     designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting any product that incorporates designs substantially similar to Atari's copyrights;

    b.     designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting any product that incorporates or is marketed in conjunction any Atari trademark or trade dress;

    c.     representing or implying, directly or indirectly, to retailers, customers, distributors, licensees, or any other customers or potential customers of Defendants' products that Defendants' products originate with, are sponsored, endorsed, or licensed by, or are otherwise associated or affiliated with Plaintiff;

2.      For an order requiring the destruction of all of Defendants' infringing products and all marketing, advertising, or promotional materials depicting Defendants' infringing products;

3.      For an accounting of all profits obtained by Defendants from sales of the infringing products and an order that Defendants hold all such profits in a constructive trust for the benefit of Plaintiff;

4.      For an award to Plaintiff of all profits earned by Defendants from their infringing acts;

5.      For compensatory damages according to proof;

6.      For statutory damages of no less than $150,000.00 per registered copyright and no less than $2 million per registered trademark per type of good;

7.      For pre-judgment interest on all damages awarded by this Court;

8.      For reasonable attorney's fees and costs of suit incurred herein; and

9.      For such other and further relief as the Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  May 12, 2021

Respectfully submitted,

**BROWNE GEORGE ROSS**
**O'BRIEN ANNAGUEY & ELLIS LLP**
Keith J. Wesley (*pro hac vice* forthcoming)
Joachim B. Steinberg

By    */s/ Joachim B. Steinberg*
　　　Joachim B. Steinberg

2121 Avenue of the Stars, Suite 2800
Los Angeles, California  90071
Telephone:310.274.7100
Facsimile: 310.275.5697
kwesley@bgrfirm.com

44 Montgomery Street
Suite 1280
San Francisco, CA 94104
Telephone:415.391.7100
Facsimile: 415.391.7198
jsteinberg@bgrfirm.com

Attorneys for Plaintiff *Atari Interactive, Inc.*